Thomas Grumman here today representing Plaintiff Appellant in Pax Laboratories. There are two issues that have been appealed in this case, one of which is an issue of a finding by the District Court after trial of no anticipation of the 814 of the patents, claims 1 through 5, based upon the 940 prior art patent. The other issue is a finding of no inequitable conduct, again after trial. But while there were some issues brought up at trial regarding a specific issue has been appealed in this instance, which is the issue of whether the selective disclosure by Dr. Lavelle, the inventor, in the declaration. What's the standard of review on the anticipation issue? It's a factual question typically, Your Honor. So substantial evidence supports that the judge were to find in his favor? That would typically be correct, Your Honor. However, we would submit here that the facts are undisputed and that the judge made clear legal errors based upon those facts. Proceeding to those, the first issue is the judge, Judge Farnan, found that there was, because the disclosure in the 940 patent was of a genus that was full of hundreds if not thousands of compounds, that there was no teaching that really is all would be effective in treating ALS, despite the fact that there was language in the 940 patent which said that compounds of that general formula would are hence useful in treating, among other conditions, ALS. Now, the judge found as a fact, a fact that hasn't been appealed, that really is all was a member of that genus and it was specifically disclosed. As a specifically disclosed member of that genus, there was no need to go to an analysis of hundreds of thousands and whether or not something was specifically pointed out or not. We believe this court's recent holding in the Paracon case specifically addresses that point, that there's no need to specifically call out something from a disclosure, if it is specifically disclosed. So the genus analysis we would submit as error. Okay, but there was a factual finding, was there not, that one of ordinary skill in the art would not have known that the drug was effective. And don't we have to defer to that finding and doesn't that compel the result here? I don't believe so, Your Honor. You do, we defer to the finding, but the factual, or again, the legal issue there, is whether or not one has to believe or has to know that the drug is useful in the condition. And this court, again, recent decision in Rasmussen, which was cited both in the red brief as well as the reply brief, says that there's no requirement with regard to 102 as opposed to 112, that you actually demonstrate that Realiazole would be effective. It's enough if you look and see that Realiazole is one of those specifically disclosed compounds that's taught to be effective, and that one can then see treating ALS with Realiazole. Was Rasmussen decided after, it was decided after the judge ruled in this case? It was decided after the judge ruled in this case. So he didn't have the benefit of Rasmussen's support? That's correct. In fact, I believe it was decided even after the submission of our red brief. That was an interference case, right? That was an interference case. A little different context. Distinguishing enablement to make from enablement to use, rather strange set of circumstances in that case, right? It was a strange set of circumstances, certainly, Your Honor. But the point is a legal point, which is applicable, it seems to me, whether it's interferences or not. The question is, and it refers back to N. Ray Hafner, which ultimately refers back to, I believe, the Brenner v. Manson case from the Supreme Court. The issue is whether 112 requires that one show that you can actually use the compound for the intended purpose. And that is something that is required for 112, that you be able to make and use the invention. 102 does not require that. That was specifically found by this Court's predecessor in Hafner and was emphasized in the Rasmussen case that was previously submitted within the last year. So it's our submission that that's legal error. That finding, even if true, and we would dispute the accuracy of that. How many, Ray Luzold was one of how many compounds that were listed in the prior art? In the prior art, with regard to the specific genus, to our calculation was 18 that are disclosed within that specific genus. 18? 18. It wasn't listed as one of the four especially advantageous compounds, right? It was not. How do you come to 18? I thought we were talking about a very large number in this prior art. The genus is very large, Your Honor, and all the questions about the hundreds of thousands or what would be the scope Hundreds of thousands. Hundreds or thousands. Hundreds or thousands. How do you narrow that to 18? What we did was we looked in the disclosure of the 940 patent and we looked, there's, with regard to all those generic compounds, there is a chemical backbone that is consistent. It's the benzene thiazole ring system. And if you look at the number of benzene thiazole compounds that are disclosed in the 940 patent i.e. that would fit within that genus, then the specific disclosure of the compounds in that genus is a matter of 18 according to our calculation. And that's the basis we did it on. If we were to disagree with the court's conclusion regarding the enablement question, are there further issues left on the anticipation until we sent it back to the judge? Are there further issues to be resolved? We don't believe so, Your Honor. We believe that this court can find, as a matter of law, that because the court did not find, despite argument, that riluzol, in fact we found riluzol was specifically within the genus, there's no question of the effective amount claims because in Column 13, when you look at those, at that disclosure in the 940 patent, there's a specific disclosure of effective ranges to be tested. There's a specific disclosure of ALFs. Now, even with regard to the dependent claims, there's been some arguments on Claims 2 and 3 separately here. Claims 4 and 5, we submitted in our opening brief why we felt those were anticipated. Those have never been argued by an appellee, either here or below, that those claims don't stand or fall with Claim 1. So it's our belief that all of these can be submitted and decided by this court without remand. Now, specifically on the questions of Claims 2 and 3, Claims 2 and 3 deal with whether or not the ALS that's being treated as the early bulbar form, or early bulbar onset, are the bulbar form. And there were some disputes below about claim construction. But the question is here, the District Court found, as a matter of fact, that we infringed by, or we induced infringement through our labeling, which would only say, use Williazol to treat ALS. And based upon that, he found that that was an inducement of infringement. And since this is an anti-case, we're not looking at anything other than what was specifically in our product insert, or our proposed product insert. Now, the recitation of the 940 patent, if you find with us on Claim 1, necessarily follows from that. It teaches Williazol, it teaches treating ALS, and it teaches the effective amount. Therefore, it would be our argument that because what would infringe in this case, our labeling, which specifically only teaches generalized treatment of ALS, is in the prior art patent, as Williazol being treated to teach, or to treat ALS. Because of that, that which comes earlier must anticipate if we infringe. So it's an either-or to us. And the way the judges found the facts, we've been found to infringe. We're willing to accept that. But based upon that, it's our conclusion, and our argument, that therefore, Claims 2 and 3 must fall as well. If we were to agree, would you, wouldn't the judge still have to make a determination with respect to, in other words, if we agreed with your argument that it should go back under Musgrove, I'm sorry, under Musgrove, under Rasmussen, I apologize. Under Rasmussen, okay. Wouldn't there still have to be a determination with respect to undue experimentation? I don't believe so, Your Honor. The question is... And then a determination after that on whether there was anticipation. Oh, with regard to anticipation, I don't believe so, because there are only three material limitations here that use of Williazol in treatment of ALS in an effective amount. And those are specifically laid out in the patent. I don't think there's any dispute about that. I don't think an appellate has disputed that either. But with regard to your initial question of undue experimentation, I don't believe so, because Rasmussen, again, to my understanding, to my reading of it, says that you are not required to show any effectiveness at all. That's not required under 102. What you're required is to show that you use Williazol and that you treat ALS with it. Now, perhaps this would be a different fact, a different case, and might be one that would be subject to remand if you didn't know how to use it. Then that would be the undue experimentation. Can you take Williazol and use it to treat people? There's no question you can't. Williazol was known as a pharmaceutical for other uses. There's no question you can take that drug, make it into a product, and dose it to individuals and treat ALS with it. So I don't believe there's any need to remand on that particular issue. Can I ask about the claims four and five, I guess, the compounds you referred to, column 13 in the patent. Yes. But it seems to me one of the paragraphs there, what seems to be the intro paragraph says that the compounds, according to the invention, are especially useful, and then they list the examples. Do those compounds that are referenced there include what's at issue here? We believe so, basically. Because in the earlier paragraph, in column one, when they call out the compounds, they don't form part of the invention because they're in prior art. So if they don't form part of the invention, and you've already called that out in column one, why in column 13 when you're referring to the compounds according to the invention, why would that include those? We believe that's covered by what the district court found as a fact, i.e. that those compounds, I'm sorry, Williazol is within the scope of those compounds. Now the compounds that the inventionists claim could not include Williazol in the genus, for obvious reasons, that would anticipate the genus. But the district court specifically found that for all other purposes, for the use and treatment of those compounds, that Williazol would be included within the scope of that. So we would submit that's a factual finding which this court should give deference to, which I don't believe is on appeal. Now turning to the inequitable conduct just briefly, the issue here, this is not an issue of failure to disclose a prior art patent or anything like that. It's a failure to submit all the relevant evidence of which the inventor was aware with regard to a declaration he submitted. Now the arguments here are that those were withheld because they lacked statistical significance in the compounds that were withheld. But we believe the proper analysis is when you submit a declaration that under this court's predecessor's decision, Norton v. Curtis, you're assumed to be in the evidence which is most relevant and the closest which you're aware. There's no question when you look at the actual data in this instance that the inventor did not submit the evidence of which he was, or the closest evidence of which he was aware. I'm into my rebuttal time, so step down unless the court has any questions. All right, thank you. I'm going to start in a different spot because I'm afraid if I don't address the anticipation of Claim 3 first, I may not get to you in a moment of time. I think this is a clear path to affirmance, and I can present it very shortly. Claim 3 requires the use of an effective amount of riliazole to treat the bulbar form of ALS. And the parties agree as to what bulbar form means. That was actually in A109 in the Statement of Admitted Facts. It's a form of ALS that starts in the jaw, throat, tongue muscles. And there's also no dispute in the record that whether you have the bulbar form of ALS or not is of great significant clinical importance because if you have the bulbar form, you will die much more quickly when the prognosis is bleak. So this is of critical importance to, obviously to the patients, but to the physicians as well. And I believe that this claim is quite analogous to the claim that this court recently found in the Perricone decision to not be anticipated. In Perricone, of course, there was a claim to using a given composition to treat skin sunburn. And while the prior art disclosed the use of that composition to treat skin in general, there was no specific mention of the subgenus of treating sunburn to skin, even though that subgenus is certainly well recognized to exist. The same is true here. Bulbar form is a subgenus of ALS. There is no dispute. Bulbar form is never referred to in the 940 patent. And therefore, there can be no anticipation under this court's holding in Perricone. And there really is only one argument that IMPACTS puts up here, and it's in the argument we heard already, that because Judge Farnan found that they will induce infringement of Claim 3 should they enter the market with the economy, that that somehow mandates the converse finding of anticipation. And I believe that is legal error. First, they cite no proposition for that, cite no case law for that. But the proposition confounds the infringement was decided as of today, as of the trial actually, by Judge Farnan, and he found that as of today, that label will induce infringement. And they don't appeal from that. But the relevant inquiry on anticipation is at the time of invention. And there's no question in the record that at the time of the invention, one ordinary skill in the art had no expectation that anything would effectively treat ALS. This was a disease that went 100 years without a treatment. And there certainly was no expectation that if anything was ever discovered to treat this terrible disease. So what about the Rasmussen case? Well, Rasmussen is on enablement. And that does not play into the analysis, in my view, of anticipation of Claim 3. And I don't believe it was the basis of the anticipation analysis on Claim 1 by Judge Farnan either. I mean, it's not entirely clear the judge's decision on the anticipation point of the basis. I mean, I sort of read it as getting at enablement. I did not. I think he clearly stated that. In his view, and with your Honor's permission I'll shift back to Claim 1. Oh no, that's, yeah, that'd be fine. His view was that the 940 patent did not disclose the invention of Claim 1. And I think it behooves us to just stop and state what that invention is, because it's very narrow. It is the use of an effective amount, really is all, to treat a mammal that has been previously diagnosed with ALS for the express purpose of treating that ALS. So it's the use of a single compound in an effective amount to treat a single disease. And I think I'm stating the obvious by saying that in the 940 patent there is never a statement that really is all can be used effectively to treat ALS. Those two are never linked. Really is all is never disclosed as specifically treating any ailment. And instead, what impacts wanted Judge Harland... It is excluded from the group that is particularly effective for ALS, right? It is excluded from the compounds discussed in the patent. Very specifically. And I think one of ordinary skill in the art would take that and face value. Let me go back just a second to your bulbar form of ALS. Why isn't disclosure of treating ALS generally sufficient to encompass treatment of the bulbar form of ALS? For the same reasons as in Paracol, the disclosure of treating skin generally is not sufficient to disclose treating sunburned skin. And if I may, simply read from a New England Journal of Medicine article in 1994. It's of record at 7551. It's reporting on the first clinical trial with really is all. So this is actually after the date of invention. But the independent researchers, the authors of the article stated... There was a little difference in Paracol. In Paracol you were treating dry skin or something else and that was a different use than treating it as, using it as a method of treatment for a particular skin ailment, sunburn. In this instance, they're talking about treating ALS and you're saying, well, but they didn't specify this virulent form of ALS. So there seems to be a slight distinction. I don't believe there would have been a distinction in the mind of one of ordinary skill in the art at the time of the invention. And if I may just quote from the New England Journal on what the thinking... I mean, this is the best evidence of what the thinking was, not attorney argument up here today. Even after using really is all in a clinical trial, the researchers found that the favorable effect of really is all on survival seems to depend on the site of onset of the disease. A large and significant effect was observed in patients with ALS of vulgar onset. Whereas in those with disease of different onset, only a positive trend was detected. Clearly, really is all was less effective in patients with limb onset disease, but at this point, we can't precisely... So the mindset at that point, and certainly before really is all had been discovered, was we don't know what any given treatment, if we ever find one, is going to do with respect to the vulgar form or other forms of ALS. So there was no understanding in the art. How big is the genus we're talking about here? The different forms? Just a handful, Your Honor. You heard the questions to the other side with regard to if we were to disagree with the district court, whether we send it back and there's anything left to the anticipation inquiry. Did you agree with his answers in that regard? No. First, I don't think you should send it back. Right. It's a hypothetical. If you were to, yes, I think it needs to go back to him because there are factual findings that need to be made about the disclosure in 940PAT because, again, there is no linkage in the 940PAT that brings really is all together with ALS. If, in fact, his holding was based on enablement, and I don't believe it was, then such that Rasmussen comes into play, then I think he needs to go back and take a look at the facts. The prior art list, Raouzal, and it lists treatment of ALS, and it lists a group that are particularly effective in treating ALS that doesn't include Raouzal, but why is there no linkage between Raouzal and ALS? Because it's the way that Raouzal is mentioned. It's the context. Anticipation is not just a word search effort. We find the word Raouzal, we find ALS, we're done. Raouzal is mentioned in two contexts, two contexts only in the 940PAT. First, when it is specifically excluded from what's being discussed, and that happens twice in column one. It happens again in the claims, both the composition and the compound claims of the audio patent, and as well the method of treatment claims in the audio patent. One of ordinary skill in the art would take those exclusions at absolute face value. But it's not excluded from the language that appears at the end of column two and beginning of column three, which says, and hence useful, and then it lists five categories, and the latter includes ALS, correct? Judge Farnan found that Raouzal, notwithstanding the exclusions, was still part of formula one. So that paragraph is now referring to hundreds of thousands of compounds. Which says that it's useful in the treatment of ALS. No, it doesn't say that. That goes too far. Hundreds or thousands or hundreds of thousands? No, it's hundreds or thousands. At least hundreds, more likely thousands. There was no hard totaling of the compounds at the trial. But it stretches the point too far on the ALS side as well. What that paragraph bridging columns two and three says is the compounds of formula one are meant to treat glutamate effects. They are useful in treating convulsions linked to glutamate, and hence so now it tells us what the logic is going to be. Useful in a significant laundry list of diseases. And when it gets to the category that includes ALS it talks about also neurological conditions that may be implicated. No, but the subject in that sentence says neurological conditions in which glutamate may be implicated. Yes, yes. I misquoted. I didn't mean to. But the may there, and the logic makes it clear that if it's not implicated. But the may is in the context in which glutamate may be implicated. It's not in the context of whether or not something is useful. Yes, it is. I respectfully disagree. Taken as a whole, it starts out and says these compounds are useful for treating conditions associated with the effects of glutamate. That is the premise. It then states, and it actually has data on glutamate induced convulsions and then states therefore we conclude that it is useful for these things, but when it gets to the neurological conditions, it states in which glutamate may be implicated. So if it's not, it's at best, as Judge Farnan found, mere speculation that all of the compounds in Formula 1, hundreds or thousands, it's not mentioned in this paragraph, all of those compounds may. Again, just follow up. I thought you said again hundreds of thousands. You're saying or thousands. Okay, now I'm here. Now, Rasmussen was decided after this. How does that affect this case? Well, I believe Judge Farnan was a holding specifically that the 940 patent does not disclose the invention, not that the 940 patent was not enabled. I don't believe his decision holds that. Instead, he concludes, as we do, that there is nothing that would impair skill in the art. Use of Riliazol in an effective amount to treat ALS. You can now use hindsight. You can now use our patent as a roadmap, and that's precisely what IMPACTS has done, but I don't believe it's in accordance with the law, and it's not an enablement issue, which is what Rasmussen addressed. It's just plain old lack of disclosure, because the only disclosure of Riliazol is an exclusion telling one of ordinary skill in the art I'm not talking about to Riliazol, and while a patent lawyer might look at that exclusion and say, aha, I know why that's there, I'm on very safe ground by saying that one of ordinary skill in this art is not a patent lawyer and instead would take the exclusion and face value on reading the 940 patent in its entirety, and the person of ordinary skill in the art would recognize the explicit speculative nature of the bridging paragraph, and know it was wrong because at the time, antiglutamates had been tried to treat ALS and had all failed. So the logic was flawed, and one of ordinary skill in the art would know that. It was an on its face speculative statement concerning abuse, and there was nothing that links Riliazol, the only compound that's ever been shown to be effective to treat this fatal disease with the treatment of ALS, and the 940 patent doesn't get you any closer except in the permissible hindsight. So in summary I believe there was no clear error by Judge Farnon in any of his factual findings. I don't believe Rasmussen is a problem with his decision as it stands. Should your honors feel that he needs to consider Rasmussen, then the appropriate thing to do is to remand it to him to review the facts. Thank you. Thank you very much. Mr. Musgrove, you have a little less than three minutes remaining. Thank you, Your Honor. If I may go first where counsel went to claim three. Your Honor asked a question as to how many forms of ALS are included within that genus. It's an undisputed fact. It's in the statement of admitted facts in this case that A113 paragraph 64, that there are only two forms of ALS. There's limb-onset and there's ball-onset. And it is also undisputed that limb-onset will ultimately become ball-onset because that's... But anticipation has to have each and every element. Claim three has this over-formed element. That is not recited in the prior art, is it? So you... We're already outside on that one, aren't we? We would submit no, Your Honor. If ALS is viewed as being a genus of two, it's undisputed, and I think this court... Petering was cited to this court on other grounds, but Petering says if one of our new skills in the art knows what the genus is and can visualize both of those, i.e. visualize both limb-onset and ball-onset, that you know those are there, then that's anticipated. Inherent. You're talking inherent anticipation? I'm not talking about inherent anticipation. Well, you have to be talking inherent because you've got a limitation which is not recited in the prior art. Your Honor, if you want to view Petering as an inherency case, then perhaps that's how you view it. But to me, Petering says, effectively, if one of our new skills in the art... If I look at ALS, if I'm one of our new skills in the art, and I know that ALS includes both limb-onset and ball-onset, if I know that, then including those words in the prior art would be mere surpluses. Somebody already knows that. It's a disclosure. If the genus is small enough, it's a disclosure of each and every sub-genus within that. And where you only have two, we would submit that that's a disclosure. That's also the evidence in front of the trial court in this instance. Both Dr. Brooks, a Venice's expert, as well as Dr. Rothstein, our expert, indicated that regardless of time, everybody views ALS as ALS. And that goes back to whether, if we infringe, is this claim anticipated as well? We induce infringement of the Bulber form. Is that claim anticipated? The answer we would submit is yes. Because there's no distinction in this art, and there's no evidence of a distinction in this art, that somehow you would know now, today, on a finding of infringement, that this would treat Bulber onset, but you wouldn't believe that to be the case back then. There's no evidence of that. In fact, all the evidence is to the contrary in this case. So, we would submit on that portion, there's no question. With regard to, I also heard that there would be an expectation that would treat Bulber onset. There's no requirement of a reasonable expectation of success in anticipation. There's only a requirement that it be enabled. A reasonable expectation is something for an obviousness analysis, not for anticipation analysis. Now, I'm sorry. Thank you very much.